No. 30,842

G. A. DORMAN and JOHN FABRIZIUS, *Appellees*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TREGO, *Appellant*.

(25 P. 2d 350.)

Opinion filed October 7, 1933.

*W. H. Wagner,* of Wakeeney, for the appellant.
*E. C. Flood,* of Hays, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover an amount paid by appellees for taxes which it is claimed were unlawfully exacted.

The Trego County Farmers Union Bank, a private bank, was assessed in March, 1928, on a valuation of $22,000, and thereafter tax was extended at the general *ad valorem* rate in the amount of $1,062.60. In November of 1928 the bank voted to go into liquidation, and in carrying out its liquidation scheme it assigned to individuals in Wakeeney most of its assets to secure payment to its creditors, and elected as a trustee the plaintiff Fabrizius, under the liquidating contract. Later plaintiff Dorman was elected as a trustee to assist Fabrizius.

The above personal-property tax not having been paid, on March

11, 1929, the county treasurer issued and delivered to the sheriff a tax warrant, calling for the original tax of $1,062.60, plus penalties of $53.13 and plus the treasurer's fee of $0.10, making a total of $1,115.83. The warrant was returned by the sheriff on April 29, 1929, and was then by the county treasurer redated and redelivered to the sheriff. The sheriff sent a written notice to Fabrizius and later saw him personally, on occasions, with reference to the payment of these taxes. On May 25, 1929, Fabrizius paid the sheriff the sum of $800, and on June 4, 1929, the further sum of $200, and on June 17, 1929, the remainder of $115.83. At about the time of the second payment Fabrizius stated to the sheriff that he believed the taxes levied against the bank were excessive, but, aside from this statement, neither trustee ever made any protest, either oral or in writing, against paying the taxes. On March 3, 1930, Fabrizius, as trustee, filed his verified claim for refund of taxes in the sum of $1,000.23 with the county clerk, and the defendant board refused the claim. Thereafter, this suit was brought.

It is conceded that the tax was extended at an unlawful rate, i. e., the general *ad valorem* rate, instead of at the intangible-tax rate. Plaintiffs bring the suit on their own behalf and on behalf of the other owners of the bank, setting up by appropriate allegations their claims as to the total amount paid, the amount which they should properly pay, the amount unlawfully exacted, and allege that said bank refused to pay the taxes so levied and assessed because said taxes were unlawful, being excessive in an amount equal to the difference between the sum of $1,062.60 as extended and $110 as extended at the intangible-tax rate, and that the payments made as hereinbefore noted were made because of the statement of the sheriff that if payment were not made he would levy upon and sell the assets of the bank under duress and to prevent such sale.

A trial was had to the court, which made conclusions of fact and of law which were subsequently modified in certain particulars. Not all of the conclusions need be noticed. The eleventh and twelfth conclusions of fact are as follows:

"11. At about the same time that John Fabrizius, trustee, made the second of said payments to the sheriff of Trego county, Kansas, he stated to the sheriff that he believed the taxes levied against said bank were excessive, but aside from this statement he never made any protest against the payment of the taxes, either oral or in writing.

"12. Neither John Fabrizius as trustee nor G. A. Dorman as trustee ever

made any protest either in writing or orally against the payment of said taxes to the county treasurer nor to the sheriff of Trego county, Kansas."

And the fourth conclusion of law is as follows:

"4. The payment of said illegal amount of taxes by plaintiffs having been involuntary and been made under duress, no protest of any kind was necessary in order to enable the plaintiffs to recover herein."

Judgment was rendered in favor of plaintiffs. Defendant's motion for a new trial was overruled, and this appeal followed.

Although the briefs discuss the question of voluntary payment, the question, of the validity of the tax warrant after April 19, 1929, and incidental questions, we need not treat them here, for the appeal must be disposed of on the proposition that defendants did not pay under an effective protest. On March 19, 1929, chapter 291 of the Laws of 1929 (R. S. 1931 Supp. 79-2005) became effective. It provides:

"Any person, association, partnership or corporation, before protesting the payment of his taxes, shall be required, at the time of paying said taxes, to make and file a written statement with the county treasurer clearly stating the grounds on which the whole or any part of said taxes are protested, and shall further cite any law, statute or facts on which such taxpayer relies in protesting the whole or any part of such taxes, and shall further state the exact portion of said tax which is being protested: *Provided,* That the county treasurer is authorized to disburse to the proper county funds all portions of such taxes not protested."

Appellee argues that the above statute has no application where the tax is collected by the sheriff by virtue of a tax warrant, but comprehends a voluntary payment by the taxpayer to the county treasurer, and apparently the lower court was of a similar opinion.

In our view, the legislature, in enacting the above statute, recognized the fact that where protests were made orally there could be and frequently was dispute as to the extent and sufficiency of the protest, and even as to whether there was in fact any protest. To do away with all such controversy and doubt, it provided that the protest should be in writing and filed with the county treasurer. Under such statute, taxes unlawfully exacted may be recovered back when their payment is accompanied by formal written protest against the validity of the tax, and against being compelled to pay, and not otherwise. To hold that the statute refers only to a payment to the county treasurer would in a large measure frustrate the will of the legislature. It will be noted that the county treasurer is authorized to disburse all portions of tax not protested. If plaintiff's contention

is good, all moneys collected by the sheriff on tax warrants would have to be held until the statute of limitations had run on actions which could be brought for their recovery.

There is and could be no essential difference in actions to recover taxes unlawfully exacted, whether they had been paid to the county treasurer or to the sheriff, and we do not believe it was intended that there should be a greater burden in one case than in the other. And further, if plaintiff's contention is good, there is a material distinction necessarily to be made between taxes on real and on personal property, a distinction not even hinted at in the statute. It is evident from a reading of the statute that it was not contemplated that if a payment to the county treasurer were to be made, a detailed written statement is required, but if the taxpayer delay until the sheriff come, it is not required. The purpose of the legislature in passing the statute in question was to make certain the ground of protest and the extent of the tax protested, and there being no exceptions contained in the act, we hold it applies not only to payments made to the county treasurer, but also to payments made to the sheriff to satisfy tax warrants in his hands.

The judgment of the lower court is reversed and the cause remanded with instructions to render judgment for the defendants.